**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ROBERT G. LAMARTINA, et al. | : | |
| | : | |
| v. | : | Civil No. CCB-05-456 |
| | : | |
| GREAT AMERICAN INSURANCE | : | |
| COMPANY, et al. | : | |

**MEMORANDUM**

Now pending before the court are defendants Great American Insurance Company's ("GAIC") and Dallas Mavis Specialized Carrier Company's ("Dallas Mavis") motions for summary judgment. Additionally, GAIC has brought a motion for Rule 11 sanctions. Also pending are plaintiffs' motions to stay all proceedings and for leave to amend, which both defendants have opposed.[1] As for the defendants' motions for summary judgment and plaintiffs' motions to stay the proceedings and for leave to amend, the issues have been fully briefed and no hearing is necessary. Local Rule 105.6. For the reasons that follow, both defendants' motions for summary judgment will be granted and the plaintiffs' motions will be denied. With respect to the motion for Rule 11 sanctions, the court finds that sanctions are warranted, but further briefing is necessary to determine the appropriate amount.

**BACKGROUND**

In this insurance coverage dispute arising out of an alleged "hit and run" accident,

---

[1] It appears that plaintiffs' motion for leave to file an amended complaint was filed in error and has since been terminated or withdrawn. Defendant GAIC, however, responded in opposition to the motion for leave. In case there is any confusion, the court will address, and deny, the motion for leave.

1

plaintiffs, Mr. and Mrs. Lamartina ("the Lamartinas"), both Maryland residents, seek monetary damages for an alleged breach of contract by GAIC and Dallas Mavis.[2] Mr. Lamartina owned and operated his own tractor trailer and was an independent contractor, under dispatch for Dallas Mavis at the time of the accident. According to the plaintiffs, Mr. Lamartina's automobile insurance coverage for his tractor trailer was obtained through his electing to participate in a Dallas Mavis program whereby Dallas Mavis arranged coverage for its independent contractors and deducted the premiums from their paychecks.  (*See* GAIC's Reply to Opp'n to Summ. J., Exhibit A, "November 4, 2005 Letter.") Neither Dallas Mavis nor GAIC dispute that Dallas Mavis offers such an arrangement to its independent contractors. What is disputed by Dallas Mavis, however, is the extent to which Mr. Lamartina elected to participate in the program.

The Lamartinas allege that a Dallas Mavis representative orally assured Mr. Lamartina that the plan Dallas Mavis would arrange would provide all the coverage Mr. Lamartina would need, including uninsured motorist ("UM") coverage, from one carrier. The Lamartinas also allege that, on the Dallas Mavis representative's advice and assurances, Mr. Lamartina allowed his old comprehensive coverage to lapse, and authorized deductions from his paycheck to pay for the insurance Dallas Mavis arranged, with the understanding that coverage would be provided for accidents such as the one involved here. Dallas Mavis disputes these allegations, presenting evidence that Mr. Lamartina signed an "Insurance Authorization" agreement wherein he opted out of some of the available coverage, including "physical damage" coverage that apparently would have covered some of his losses from this accident. (*See* Dallas Mavis Mot. for Summ. J,

---

[2] Both plaintiffs also have included loss of consortium claims against the defendants. Additionally, in their proposed amended complaint, the Lamartinas seek to add a claim of negligent misrepresentation against Dallas Mavis.

2

Exhibit B, "Insurance Authorization.").

Through this Dallas Mavis facilitated arrangement, it is undisputed that Mr. Lamartina did elect and was provided coverage by GAIC under a "Non-Trucking Liability and Physical Damage Auto Coverage" policy ("NTL"). (GAIC's Mot. for Summ. J., Exhibit 2, "the policy.") Essentially, this policy provided coverage, including UM coverage, for accidents that occurred when the trucker was not hauling cargo for a carrier such as Dallas Mavis.[3] The policy in question states that:

> Part II. Liability Coverage for Non-Trucking Use...Exclusions.  This insurance does not apply to any of the following...Trucking or Business Use: Liability arising out of any accident which occurs while the covered auto is being used in the business of anyone to whom the covered auto is leased, rented, or loaned or while the covered auto is being used to transport cargo of any type. For the purposes of this exclusion the phrase, "in the business of anyone to whom the covered auto is leased, rented, or loaned," means any of the following uses of the covered auto...c. used by anyone acting under dispatch of anyone to whom the covered auto is leased, rented or loaned.

(*Id.*)[4]

On December 8, 2004, the extent of coverage maintained by Mr. Lamartina became pertinent.  Mr. Lamartina claims that on December 8, 2004, in Opal, Virginia, while driving his

---

[3] In this industry, such coverage is known as "bobtail" (when the owner/operator is operating just the tractor, without a trailer) and "deadhead" (when the owner/operator is pulling an empty trailer) coverage. Coverage for accidents occurring while transporting cargo was to be provided under a separate policy, the existence of which is part of the dispute here.  In any event, Mr. Lamartina brought this suit against GAIC for its failure to provide UM coverage for damage to his freightliner and himself resulting from an accident that occurred while he was carrying cargo for Dallas Mavis.

[4] Through this arrangement with Dallas Mavis, Mr. Lamartina also had an "Occupational Accident" insurance policy in place.  This policy provided temporary total disability benefits.  GAIC maintains, and the Lamartinas appear not to contest, that GAIC has fully met all of its obligations under that policy. (*See* GAIC's Mot. for Sanctions, Exhibit 3, "March 16, 2005 Letter.")

fully loaded tractor trailer under dispatch for Dallas Mavis, he was in a collision caused by the negligent driving of another tractor trailer driver who fled the scene and was never identified. (*See* GAIC's Mot. for Summ. J., Exhibit 1, "Responses" Nos. 1 & 2; *see also* GAIC's Reply to Opp'n to Summ. J., Exhibit A, "November 4, 2005 Letter.")  Mr. Lamartina further claims that he sustained injuries and damage to his tractor trailer.  While Mr. Lamartina denies GAIC's assertion that he did not report this accident to GAIC until on or about January 26, 2005, it is undisputed that Mr. Lamartina did not provide a recorded statement regarding the matter to GAIC until March 7, 2005.  (*See* GAIC's Mot. for Summ. J., Exhibit 1, "Responses" Nos. 5 & 6.)  This action was filed on February 16, 2005.[5]  At the time of the accident, Mr. Lamartina had in place an NTL, as well as an "Occupational Accident" ("OA") policy through GAIC.  As late as his May 27, 2005 filing of responses to GAIC's requests for admissions, however, Mr. Lamartina claimed he had never seen a copy of the policy or policies that Dallas Mavis arranged, including the GAIC policies at issue here, and that he assumed comprehensive coverage was being provided by one insurance carrier. (*See* GAIC's Mot. for Summ. J., Exhibit 1, "Responses" Nos. 3, 4, 12, & 13.)

It is undisputed that neither plaintiffs or plaintiffs' counsel, Ronald W. Parker and John W. Trotz of Parker and Pallett, LLC,  had seen a copy of the GAIC policy at the time this action was filed on February 16, 2005. (*Id.*)  On March 16, 2005, after the filing but prior to service of this action on GAIC, counsel for GAIC sent plaintiffs' counsel a copy of the NTL policy, advised that there was clearly no coverage under the policy based on its exclusions, and

---

[5] It is unclear from the record whether, or in what manner, the Lamartinas ever filed a proper claim with GAIC arising from this incident before filing suit.

demanded that GAIC be dismissed from the action. (GAIC's Mot. for Sanctions, Exhibit 3, "March 16, 2005 Letter.") On March 22, 2005, counsel for GAIC forwarded a copy of the OA policy. (*Id.*, Exhibit 4, "OA Policy") Several more letters demanding voluntary dismissal were sent by GAIC, eventually culminating in these motions for summary judgment and for sanctions.[6]

In their filings in this court, the Lamartinas have repeatedly expressed frustration that neither defendant would reveal to them the insurance company which was providing coverage to Mr. Lamartina for the type of accident that occurred.[7] As this litigation progressed, the Lamartinas assert that it was revealed, for the first time, through GAIC's responses to discovery, that "there was a possibility that Liberty Mutual Insurance Company ("Liberty Mutual") had written a policy of insurance which named Mr. Lamartina as a beneficiary." (*See* Pls' Mot. to

---

[6] On March 22, 2005, GAIC wrote to demand dismissal. Plaintiffs' counsel Ronald Parker promptly responded, on March 28, 2005, that GAIC had been named as a party because GAIC had failed to provide the name of the potential applicable uninsured motorist carrier. (GAIC's Mot. for Sanctions, Exhibits 4 & 5, "March 22, 2005 Letter" & "March 28, 2005 Letter.")  Again on April 4th and May 31st, counsel for GAIC wrote plaintiffs' counsel seeking voluntary dismissal and advising that failure to do so could result in a motion for sanctions. (*Id.*, Exhibits 6 & 7.)  GAIC was served on April 7, 2005.  On June 21, 2005, GAIC again demanded dismissal and formally stated notice of its intention to bring a Rule 11 motion for sanctions, if the claim for loss of consortium was not dismissed (*Id.*, Exhibit 8.)  Plaintiffs made no response to the April, May, or June letters. On July 20, 2005, GAIC wrote to plaintiffs' counsel to advise that it would proceed with the Rule 11 motion if it was not entirely dismissed from the case. (*Id.*, Exhibit 9.)  Plaintiffs again did not respond. The motion for sanctions was served on September 20, 2005 and, GAIC having again received no response, was filed with the court on October 19, 2005 (*See id.*, Exhibit 10.).

[7] In fact, as will be discussed further with respect to Rule 11 sanctions, plaintiffs represent that they filed this suit because of the defendants' refusal to identify the appropriate insurance company.

5

Stay at ¶ 6)[8]  Plaintiffs now apparently believe that Liberty Mutual may be the appropriate insurance company with which to file Mr. Lamartina's claim for this accident, and plaintiffs have initiated that process. (*See id*. at ¶ 10)  On January 3, 2006, as a result of this allegedly newly discovered information, the Lamartinas filed a motion for "stay of all proceedings," stating that if Liberty Mutual does provide coverage, "much of the substance of the present lawsuit will be moot." (*See id*. at ¶ 11)  On the same date, however, plaintiffs also filed a motion for leave to amend in order to add a claim of negligent misrepresentation against Dallas Mavis, allegedly based on plaintiffs' continuing investigation.[9]

## ANALYSIS

*Plaintiffs' Motions*

While "leave shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), leave to amend is not to be granted automatically. *See Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987). Disposition of a motion to amend is within the sound discretion of the court, and amendments are generally accepted absent futility or undue prejudice. *See Foman v. Davis*, 371 U.S. 178, 182

---

[8] Curiously, on the accident report completed by Mr. Lamartina and the officer at the scene of the accident on December 8, 2004, Liberty Mutual is listed as Mr. Lamartina's insurance provider. (*See* GAIC's Combined Response to Mots. to Stay and for Leave , Exhibit A, "Crash Report") Ostensibly, however, this entire suit is the result of the Lamartinas' alleged ignorance of the appropriate insurance company and the defendants' refusal to inform them of its identity.  Plaintiffs make no attempt to address this discrepancy, and it is not necessary to evaluate it in considering the motions for summary judgment.  It may be relevant, however, to GAIC's motion for sanctions.

[9] Again, it appears that plaintiffs' motion for leave to file an amended complaint was filed in error and has since been terminated or withdrawn.  The court is addressing the motion, however, in case there is any confusion.

(1962); *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980).  Although the standard for allowing amendment is liberal, plaintiffs have fallen well below the standard here. As explained further below, the proposed amended complaint, like the initial complaint, is futile. Neither complaint makes out a legitimate claim against either defendant. As also explained below, this entire suit has unduly prejudiced the defendants. This motion for leave to amend, along with the motion to stay these proceedings, has only furthered this prejudice.  Both motions will be denied.

*Standard for Summary Judgment*

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment
>
> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

7

The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

*Great American Insurance Company's Motion for Summary Judgment*

Whether interpretation of the policies in question is governed by Maryland, Wisconsin, or Virginia law, the outcome is the same.[10] As further explained below, the exclusions contained in the policy apply, and GAIC has no duty to provide the coverage demanded here.

The policy exclusions at issue state, *inter alia*, that "this insurance does not apply to...liability arising out of any accident [in] which the covered auto is being used to transport cargo of any type" or when "used by anyone acting under dispatch of anyone to whom the covered auto is leased, rented or loaned." (GAIC's Mot. for Summ. J., Exhibit 2, "the policy.") Plaintiffs admit that the trailer was full of cargo at the time and that Mr. Lamartina was on

---

[10] Mr. Lamartina is a resident of, and his tractor trailer is registered in, Maryland. The accident occurred in Virginia, Dallas Mavis' offices are located in Virginia, and the employment contract between Dallas Mavis and Mr. Lamartina, which apparently included the initial arrangements for insurance coverage, was completed in Virginia. GAIC is incorporated and maintains its headquarters in Wisconsin. Defendant GAIC appears to proceed as if Maryland law applies to the interpretation of the insurance contract at issue, and the Lamartinas make no arguments to the contrary. In any event, neither party briefed the issue and determination thereof is not necessary.

dispatch for Dallas Mavis at the time of the accident. (*See* GAIC's Mot. for Summ. J., Exhibit 1, "Responses" Nos. 1 & 2; *see also* GAIC's Reply to Opp'n to Summ. J., Exhibit A, "November 4, 2005 Letter."). These exclusions clearly apply to the circumstances surrounding Mr. Lamartina's accident.

Curiously, plaintiffs do not seem to directly contest the applicability of the exclusions anywhere in their pleadings. Rather, plaintiffs make the creative argument that coverage must be read into the policy. (*See* Plf's Resp. in Opp'n to GAIC's Mot. for Summ. J.)[11] There is simply no merit to the Lamartinas' argument. In support of this argument, the Lamartinas point to the various states' mandatory UM protection laws, *see* Md. Ins. Code § 19-509; Va. Code Ann. § 38.2-2206; Wisc. Statutes Ann. § 632.32, and caselaw wherein courts have invalidated coverage exclusions contained in the UM section of policies because they were in conflict with the minimum statutorily required UM coverage. *See State Farm Auto. Ins. Co. v. Maryland Auto, Ins. Co.*, 356 A.2d 560, 562 (Md. 1976); *Penn. Nat'l Mut. Cas. Co.*, 416 A.2d 734, 739 (Md. 1980); *Staab v. Amer. Motorists Ins. Co.*, 693 A.2d 340, 344 (Md. 1997); *Young v. Allstate Ins. Co.*, 706 A.2d 650, 657 (Md. Ct. Spec. App. 1998).

The Lamartinas' position is not supported in fact or in law. The essential idea of UM coverage is "to provide an injured insured with resources equal to those which would have been

---

[11] In fact, as is covered further in the court's discussion of GAIC's motion for sanctions, the Lamartinas do not even appear to have brought this action against GAIC because of any information or belief that the GAIC policy actually provides coverage under these circumstances. Rather, the Lamartinas have stated that they named GAIC because it, along with Dallas Mavis, was the only entity they knew of that had issued them any insurance whatsoever, and because of GAIC's failure to provide the Lamartinas with the name of any other potential insurer. (*See* Plf's Resp. in Opp'n to GAIC's Mot. for Summ. J; *and* GAIC's Mot. for Sanctions, Exhibit 5, "March 28, 2005 Letter.").

available had the tortfeasor carried liability coverage equal to the amount of uninsured motorist coverage which the injured insured purchased from his own insurance company." *Waters v. U.S. Fidelity & Guar. Co.*, 616 A.2d 884, 890 (Md.1992). In other words, the UM coverage contained in a motor vehicle liability insurance policy must be equal to the amount of liability coverage provided under the policy, unless waived, and in any event, must be no less than the statutorily required minimums for liability coverage. *See* Md. Ins. Code § 19-509(e).  This much is clear even from the cases cited by the Lamartinas. *See, e.g., Staab*, 693 A.2d at 343.

The coverage exclusions invalidated in the cases cited by the Lamartinas were exclusions that applied only to the UM coverage portion of those policies and served to bring the level of UM coverage below both the statutory requirements and the liability coverage provided by the policies in general.  Here, GAIC's policy provides UM coverage as required by law and contains no impermissible exclusions specific to its UM provisions. Rather, the entire GAIC policy excludes coverage for accidents occurring when the tractor trailer is hauling cargo. It is simply not a policy for the type of accident in which Mr. Lamartina unfortunately found himself. Statutory UM coverage mandates cannot be read to require UM coverage for occurrences completely outside the scope of the overall policy.[12]

---

[12] Mr. Lamartina claims that he contracted for "comprehensive coverage" that should have included coverage for the accident at issue.  Based on this agreement that Mr. Lamartina alleges he had with Dallas Mavis for "comprehensive coverage," the Lamartinas also appear to argue that, even if the GAIC exclusions do apply, they would only be relevant in an indemnification dispute between GAIC and Dallas Mavis over which company is ultimately obligated to provide coverage to the Lamartinas.  Whatever coverage Mr. Lamartina did or did not arrange for through Dallas Mavis, however, is irrelevant to GAIC's obligations here. Moreover, to the extent any state requires a certain threshold of coverage in this case, these obligations would appear to rest on Mr. Lamartina, and in no way creates an obligation on GAIC to be the sole comprehensive provider of all such statutorily required coverage.

Based on the foregoing, the Lamartinas' claims for loss of consortium must fail as well. Claims for loss of consortium are derivative and, thus, any liability must flow from liability for physical injury to one spouse from the conduct of a third party. *See Oaks v. Connors*, 660 A.2d 423, 428 (Md. 1995). As the Lamartinas' underlying claim against GAIC fails, so do the loss of consortium claims.[13]

*Dallas Mavis's Motion for Summary Judgment*

Dallas Mavis is not Mr. Lamartina's employer. (*See* Dallas Mavis Mot. for Summ. J, Exhibit A, "Independent Contractor Agreement.") Nor is Dallas Mavis an insurance provider or agent. Mr. Lamartina is an independent contractor of Dallas Mavis and, pursuant to the Independent Contractor Agreement between the two, he could participate in a program whereby insurance coverage was obtained from outside providers and premiums were deducted from payment due. (*See id*. at pp. 6-7) Although Mr. Lamartina alleges that a Dallas Mavis representative told him to let his insurance coverage lapse because the arranged coverage would cover all of his needs, Dallas Mavis has presented a signed agreement to the contrary. (*See* Dallas Mavis Mot. for Summ. J, Exhibit B, "Insurance Authorization.") Dallas Mavis contends, and the Insurance Authorization appears to confirm, that Mr. Lamartina opted out of "physical damage" coverage, which covered fire, theft, and collision, and may have protected him here.

The Lamartinas do not respond to this contention, or to the evidence that Mr. Lamartina

---

[13] As the court rejects the Lamartinas' underlying breach of contract claim against GAIC, it need not address GAIC's argument that loss of consortium claims may not be brought based on breach of contract, but rather only with underlying tort claims for physical injury.

opted out of the pertinent coverage.[14]  Rather, plaintiffs simply reiterate the tortured argument that the law requires such UM coverage be read into the policy. This is the same argument that was rejected in considering GAIC's motion for summary judgment. Here, the Lamartinas point to the fact that the Dallas Mavis representative arranged some coverage for Mr. Lamartina.  The Lamartinas then reason that if Dallas Mavis arranged for such coverage - any coverage at all -  it must, by law, include UM protection for Mr. Lamartina. Again, the Lamartinas' position is not supported in fact or in law and, again, statutory UM coverage mandates simply cannot be read to require UM coverage for occurrences completely outside the scope of the overall policy.

The Lamartinas' breach of contract claim against Dallas Mavis must fail. Based on the foregoing, and for the same reasons stated in addressing the claims against GAIC, the Lamartinas' claims against Dallas Mavis for loss of consortium must fail as well.

*GAIC's Motion for Sanctions*

GAIC brings this motion for Rule 11 sanctions charging plaintiffs with both failing to conduct a reasonable investigation of the factual and legal basis for their claims before filing and having an improper purpose for naming GAIC as a defendant.  GAIC asserts the following: 1) plaintiffs brought this claim for coverage having never seen the policy in question; 2) plaintiffs persisted in their claim against GAIC after having been advised of the clearly applicable policy

---

[14] Moreover, Mr. Lamartina's assertion that a Dallas Mavis representative told him that all his coverage needs would be met would likely not be admissible under Maryland's objective law of contract interpretation. *See Bollech v. Charles County*, 166 F.Supp.2d 443, 455 (D.Md. 2001)(noting extrinsic evidence is not admissible unless the contract is ambiguous). The Lamartinas do not even address the Insurance Authorization which Dallas Mavis points to as the relevant unambiguous agreement, much less offer any argument that it was ambiguous.

12

exclusions; 3) plaintiffs brought loss of consortium claims when they clearly were not available under the law; and 4) plaintiffs brought these claims for an improper purpose, namely because GAIC failed to provide the name of another insurer, rather than on any recognized legal basis.[15]

In determining whether sanctions are appropriate here, the first inquiry is whether the prefiling investigation appears objectively reasonable under the circumstances. *See Giganti v. Gen-X Strategies, Inc.,* 222 F.R.D. 299, 310 (E.D.Va.2004)(*citing Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991)). To be reasonable, the factual investigation must uncover some information to support the allegations in the complaint. *Id.* A complaint containing allegations unsupported by any information obtained prior to filing, therefore, violates the prefiling investigation requirement. *See Brubaker*, 943 F.2d at 1373. The investigation must also uncover some basis in law to support the claims in the complaint. *Id.*[16]

In considering an "improper purpose" charge, while the conduct is also to be judged under an objective standard of reasonableness, consideration of the accused party's beliefs, as opposed to the injured party's view of the conduct, is proper where such beliefs are actually revealed. *Kunstler v. Britt*, 914 F.2d 505, 518-19 (4th Cir. 1990). In other words, actual

---

[15] Representing the Lamartinas was the law firm of Parker and Pallett, L.L.C. Both Ronald W. Parker and John W. Trotz were involved in this case: Mr. Parker signed the complaint, and Mr. Trotz signed the oppositions to the summary judgment motions.

[16] With respect to claims where the frivolity becomes more clear after filing, the Fourth Circuit has held that Rule 11 does not impose a duty to continually reevaluate the merits of one's case or to dismiss the case once it appears there is no longer any factual or legal basis. *See Brubaker*, 943 F.2d at 1381-83. Rule 11's requirements do attach, however, to the signing of any papers during the course of the proceedings and, thus, subsequently filed oppositions to summary judgment could be the basis for sanctions. *See id.*; *see also Fahrenz v. Meadow Farm Partnership*, 850 F.2d 207, 210-11 (4th Cir. 1988).

admissions of intent are considered "objective" in the sense that they can be viewed by the court without fear of misinterpretation. *Kunstler*, 914 F.2d at 519.

In this case sanctions are appropriate.[17] First, filing a breach of contract claim based on a contract which counsel had never seen falls below the "reasonable inquiry" standard. (*See* GAIC's Mot. for Summ. J., Exhibit 1, "Responses" Nos. 3, 4, 12, & 13.)  Second, even if this prefiling violation were ignored, plaintiffs' filing of their oppositions to summary judgment after being advised of the policy exclusions also violates Rule 11. (*See, e.g.,* GAIC's Mot. for Sanctions, Exhibit 3, "March 16, 2005 Letter.")[18]  Third, even if an improper purpose were not sufficiently clear from the circumstances, here we have repeated admissions of such a purpose. (*See* GAIC's Mot. for Sanctions, Exhibit 5, "March 28, 2005 Letter."; Plf's Resp. in Opp'n to GAIC's Mot. for Summ. J. at p.10; Pls' Mot. to Stay at ¶¶ 4 & 5).[19]

---

[17] GAIC also argues that plaintiffs' inclusion of loss of consortium claims is sanctionable. While GAIC may be correct in its contention that none of the Lamartinas' loss of consortium claims are cognizable under Maryland law, there is some authority to the contrary. *See Klein v. Sears, Roebuck & Co.,* 608 A.2d 1276, 1284 (Md. Ct. Spec. App. 1992)(citing *Phipps v. Gen. Motors Corp.*, 363 A.2d 955, 965 (Md. 1976).  In any event, the court did not evaluate those specific contentions in denying the loss of consortium claims, finding them foreclosed by the rejection of the Lamartinas' underlying claims. The loss of consortium claims, therefore, will not be a basis of the award of sanctions.

[18] To be clear, the Lamartinas do put forth a legal argument of sorts for their contention that GAIC has a duty to provide coverage, the applicability of the policy exclusions notwithstanding. As addressed previously, the Lamartinas argue that statutory UM mandates require coverage to be "read into" the policy here and that the exclusions claimed by GAIC must be invalidated. They offer no support for this position, however, sufficient to avoid sanctions.

[19] As mentioned previously, on the accident report completed by Mr. Lamartina and an officer at the scene of the accident on December 8, 2004, Liberty Mutual is listed as Mr. Lamartina's insurance provider. (*See* GAIC's Combined Response to Mots. to Stay and for Leave, Exhibit A, "Crash Report") Presumably, this information came from Mr. Lamartina.  In their motion for a stay of all proceedings, however, the Lamartinas assert that it was revealed, for the first time, through GAIC's responses to discovery, that "there was a possibility that Liberty Mutual Insurance Company ("Liberty Mutual") had written a policy of insurance which named

14

In determining the amount of sanctions, a court may, but is not required to, hold an evidentiary hearing. *See Kunstler*, 914 F.2d at 523-24 ("a sanctioned party is not entitled to an evidentiary hearing or to all of the procedural safeguards available in the context of attorney's fees actions."). Having determined that some amount or form of sanctions are appropriate, the court will request further briefing on the issue of appropriate sanctions and will reserve judgment on whether an evidentiary hearing or oral argument is necessary.[20]

## CONCLUSION

Based on the foregoing, the plaintiffs' motions for leave to amend and to stay the proceedings will be denied, and the defendants' motions for summary judgment will be granted.

---

Mr. Lamartina as a beneficiary." (*See* Pls' Mot. to Stay at ¶ 6)  As plaintiffs have admitted that this suit was filed because of defendants' refusal to inform them of the identity of the appropriate insurance company, the fact that Liberty Mutual was listed on the accident report is especially troubling and further militates toward a finding of improper purpose.

[20] A court awarding sanctions must explain why its chosen penalty is "the minimum amount of sanctions reasonably necessary to deter." *See Brubaker*, 943 F.2d at 1387.  In determining an appropriate sanction, a court must consider (1) the reasonableness of the opposing party's attorney's fees; (2) the minimum award necessary to deter the improper conduct; (3) the ability of the offending party to pay the sanction; and (4) factors relating to the severity of the violation. *See Kunstler*, 914 F.2d at 523; *see also Melkersen v. Ray Constr. Co. Inc.*, 315 B.R. 45, 48 (D.Md.2004). With respect to the final prong, while incompetent or inexperienced attorneys are not held to a lesser standard for purposes of assessing the reasonableness of the investigation, *see Brubaker*, 943 F.2d at 1373 (citing *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987), the offending attorneys' history, experience, and ability are relevant in determining the amount of the sanction, including whether the attorney has been previously sanctioned. *See Kunstler*, 914 F.2d at 524-25. Finally, while still subject to the aforementioned parameters, sanctions can take many forms and are not limited to monetary awards. *See Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 150-51 (4th Cir. 2002). These factors will be considered after further briefing.

The motion for Rule 11 sanctions will be granted in part.  The court will reserve final determination of the amount of the sanctions until after further briefing.

     A separate Order follows.

  March 31, 2006                                    /s/
       Date                                    Catherine C. Blake
                                              United States District Judge